

**ORDERED in the Southern District of Florida on May 26, 2021.**

_Mindy A. Mora_
_____
**Mindy A. Mora, Judge**
**United States Bankruptcy Court**

---

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
### www.flsb.uscourts.gov

In re:                                                    Case No. 08-28921-MAM

Carl John Spagnuolo,                                      Chapter 13

     Debtor.
_____/

## <ins>MEMORANDUM OPINION AND ORDER GRANTING MOTION TO AMEND AND SUSTAINING OBJECTION TO CLAIM</ins>

Sometimes, a mistake is just a mistake. And, to trot out another familiar maxim, if you snooze, you lose. Both adages apply in this unusual tale of erroneous recording information and stale claims.

## BACKGROUND

### A.    Motion to Amend

On July 29, 2020, Carl John Spagnuolo ("Debtor") filed a motion (ECF No. 85) (the "Motion to Amend") seeking to amend a prior order of this Court (ECF No. 52) (the "Third Valuation Order"). Through the Motion to Amend, Debtor sought to correct the Third Valuation Order's description of the recording information for a mortgage presently held by Heartwood 47, LLC ("Heartwood").

In connection with the Motion to Amend, Debtor also filed an objection (ECF No. 81) (the "Objection") to a proof of claim (POC 6-1) (the "Claim") filed by Heartwood on June 26, 2020. Heartwood filed its Claim eleven years after the occurrence of the claims bar date and the entry of an order confirming Debtor's chapter 13 plan, and over six years after entry of Debtor's discharge and closure of this Bankruptcy Case.

### B.    First Valuation Motion

Twelve years earlier, on December 11, 2008 (the "Petition Date"), Debtor filed this chapter 13 Bankruptcy Case. One week later, he filed a complete set of schedules and statements of financial affairs (ECF No. 9) (the "Schedules and Statements") and his original chapter 13 plan (ECF No. 14), which he later amended (ECF No. 33) (the "Amended Plan"). Prior to confirmation of the Amended Plan, Debtor filed a motion to value real property located at 537 Overlook Drive, North Palm Beach, Florida (ECF

No. 17) (the "<u>Overlook Property</u>").[1] The Court granted this valuation motion on February 24, 2009 (ECF No. 23) (the "<u>First Valuation Order</u>").

The First Valuation Order established the value of the Overlook Property at $389,000. It also stripped and removed a second mortgage lien (the "<u>Lien</u>") held by BankAtlantic ("<u>BankAtlantic</u>"). The First Valuation Order specified that (i) Countrywide Home Loans ("<u>Countrywide</u>") held a first mortgage on the Overlook Property in excess of $435,884.55, (ii) the second mortgage (the "<u>BankAtlantic Mortgage</u>") evidenced the Lien relating to BankAtlantic Account # 001344306400001 (the "<u>BankAtlantic Account</u>"), and (iii) the value of the Overlook Property was insufficient to secure the Lien. The First Valuation Order decreed BankAtlantic's claim to be wholly unsecured and directed the chapter 13 trustee ("<u>Trustee</u>") to pay $0 to BankAtlantic on account of its mortgage claim.

C.    <u>Second Valuation Motion</u>

A little over one month later, on March 14, 2009, Debtor filed an amended valuation motion (ECF No. 25) (the "<u>Second Valuation Motion</u>") as to the Overlook Property, once again naming BankAtlantic as the lienholder with a second mortgage behind Countrywide. The Court granted the Second Valuation Motion (ECF No. 34) (the "<u>Second Valuation Order</u>"). The Second Valuation Order reaffirmed the value of

---

[1] The Overlook Property is legally described as Lot 79 Golf Course Addition to the Village of North Palm Beach according to the plat thereof on file in the office of the Clerk of the Circuit Court in and for Palm Beach County, Florida.

the Overlook Property at $389,000 and once again stripped and removed (to the extent any lien still existed) the Lien from the Overlook Property.

The Second Valuation Order directed BankAtlantic to file any documents necessary to release the Lien from the public records of Palm Beach County upon Debtor's completion of plan payments and entry of his discharge. Unfortunately, it incorrectly described the recording information of the BankAtlantic Mortgage as Official Records Book 19417, Page 1970, Public Records of Palm Beach County, Florida (the "19417 Reference").[2] The Second Valuation Order also authorized the filing of a certified copy of that order (along with a certified copy of the discharge order) as a full satisfaction and release of the BankAtlantic Mortgage, but erroneously repeated the 19417 Reference as part of this directive.

In addition to filing and obtaining orders on both of his valuation motions, Debtor ensured that his Amended Plan described treatment of the amount owed to BankAtlantic as a general unsecured claim and specified that the Lien would be stripped. On April 24, 2009, the Court confirmed Debtor's Amended Plan (ECF No. 37) (the "Confirmation Order"). BankAtlantic received notice of confirmation.[3]

Approximately four and a half years later, on October 23, 2012, Heartwood filed a notice of transfer of claim (ECF No. 44) (the "Notice of Transfer") from

---

[2] The Second Valuation Order was based upon a proposed order submitted by Debtor's counsel.

[3] The Bankruptcy Noticing Center (BNC) Certificate of Notice filed as ECF No. 38 reflects service of the Confirmation Order upon BankAtlantic.

BankAtlantic to Heartwood referencing the BankAtlantic Account. Because BankAtlantic had not previously filed a proof of claim in this Bankruptcy Case, the Court issued a notice of deficiency ("NFD") regarding the request for transfer of claim. The NFD stated that Heartwood's transfer request could not be processed because the request did not contain a claim number as required by Local Rule 3001-1(C)(1).[4] Heartwood did not take any action to address or respond to the NFD.

     D.    Third Valuation Motion

A few months after the filing of the Notice of Transfer, Debtor filed a "second amended" valuation motion (ECF No. 49) (the "Third Valuation Motion")[5] for the Overlook Property. The Third Valuation Motion described the Overlook Property as collateral potentially securing a claim now held (according to ECF No. 44) by "Heartwood 47, LLC, a Florida LLC and/or BankAtlantic and/or Branch Banking and Trust Company" (collectively, "Lender").[6] The Third Valuation Motion stated in the title and above the first paragraph of the text that it sought to (i) determine the secured status of the Lien held by Lender, and (ii) value collateral securing Lender's claim.

The Third Valuation Motion identified the Overlook Property by street address

---

[4] *See* ECF No. 45-1.

[5] This was the third valuation motion filed by Debtor relating to the Overlook Property and the Lien.

[6] ECF No. 49. Heartwood is an affiliate of BankAtlantic formed to hold assets subsequent to a merger between BankAtlantic and Branch Banking and Trust (a.k.a. BB&T). Counsel to Heartwood clarified this relationship on the record at a hearing held on November 2, 2020 on the Motion to Amend and the Objection.

and legal description but mistakenly identified Lender's mortgage using the 19417 Reference. Debtor served the Third Valuation Motion by certified mail upon Heartwood's registered agent, Stan Linnick R.A. at one address, and manager, Valeria C. Toalson at two different addresses.[7]

In the Third Valuation Motion, Debtor alleged that no equity existed in the real property after payment of Countrywide's senior secured claim and declared the value of Lender's secured claim as $0. Debtor also noted that Lender had failed to file a proof of claim, which meant that no distribution would be paid on account of any unsecured claim held by Lender. As a final point of clarification, Debtor recounted the prior entry of the Second Valuation Order and explained that the Third Valuation Motion was filed solely to ensure compliance with local bankruptcy forms adopted subsequent to entry of the Second Valuation Order.

After notice and a hearing, the Court entered the Third Valuation Order.[8] This order repeated the same substantive provisions found in both the First Valuation Order and Second Valuation Order, thereby reaffirming the value of the Overlook Property at $389,000 and stripping (to the extent not previously stripped by the First

[7] ECF No. 51. Debtor also served BankAtlantic and BB&T. *Id.*

[8] As is customary in this district, counsel to Debtor supplied the proposed form of order to the Court. The form of order followed Local Form 92, which at that time had just been approved as a local form.

and Second Valuation Orders) the Lien.[9] The order also fixed the value of the Lien (or any other claim held by Lender) at $0, determined that the mortgage evidencing the Lien was void, and provided for the automatic extinguishment of the Lien upon entry of Debtor's discharge. As with the Second Valuation Order, however, the Third Valuation Order incorrectly described the public recording information of Lender's mortgage using the 19417 Reference.

      E.   <u>Events After Entry of Valuation Orders</u>

Lender did not respond to the Third Valuation Motion, nor did Lender attend the hearing upon that motion.[10] Lender did not file a motion to reconsider the Third Valuation Order. Lender did not take an appeal of that order. In short, Lender did nothing to preserve the Lien and Lender's secured claim prior to or immediately after entry of the Third Valuation Order, despite having filed the Notice of Transfer and having received notice of the Third Valuation Motion.

About nine months after entry of the Third Valuation Order, Trustee filed a notice of plan completion.[11] Shortly thereafter, on December 31, 2013, the Court granted Debtor's discharge (ECF No. 57).[12] In March 2014, Trustee filed a final report

---

[9] Because the Lien was previously stripped off by court order, BankAtlantic did not have recognizable lien rights to pass on to Heartwood. As a result, it is unlikely that Heartwood held any lien interest as of the date of the Notice of Transfer. *See* Analysis Section A, *infra*.

[10] The definition of "Lender" in the Third Valuation Motion includes Heartwood.

[11] ECF No. 54.

[12]  ECF No. 87.

(ECF No. 59), which was quickly followed by entry of a final decree and discharge of Trustee (ECF No. 60). The Court closed Debtor's Bankruptcy Case on April 29, 2014.

F.    The Motion to Amend and Ensuing Litigation

On May 27, 2020, a little over six years after completion of plan payments and entry of discharge, Debtor moved to reopen his Bankruptcy Case (ECF No. 62) (the "Motion to Reopen") to file the Motion to Amend. Heartwood responded (ECF No. 74) to the Motion to Reopen and, eleven and one-half years after the filing of the Bankruptcy Case, eleven years after the claims bar date noticed to creditors in the Bankruptcy Case, and seven years after notice to Lender of Debtor's intent to strip the Lien via entry of the Third Valuation Order, Heartwood filed its Claim. Heartwood bases its purported ability to assert the Lien upon the inclusion of the 19417 Reference in Debtor's prior filings.

G.    The Error and Heartwood's Contention

In numerous filings, Debtor included the erroneous 19417 Reference instead of the proper recording information. In his schedules and statements, however, and in each of the various valuation motions, Debtor correctly identified the Overlook Property by street address and legal description. Debtor also identified the BankAtlantic Account—the mortgage account to which the Lien relates—by its full account number in his Schedules and Statements, the First and Second Valuation Motions, and his confirmed Amended Plan. The First Valuation Order and the Second Valuation Order likewise identified the BankAtlantic Account by its full

8

account number and the Overlook Property by street address and legal description.[13]

Heartwood does not dispute that its predecessor in interest, BankAtlantic, received notice of the Schedules and Statements, the First and Second Valuation Motions, the First and Second Valuation Orders, the Amended Plan, and the Confirmation Order. Heartwood also does not dispute that Heartwood itself received notice of the Third Valuation Motion and Third Valuation Order. Heartwood's sole point of contention is that incorporation of the 19417 Reference in several Court documents relieved Heartwood of any obligation to monitor the Lien. Based upon this theory, Heartwood asserts that it lacked proper notice of the prior disposition of the Claim.

**ANALYSIS**

A.    <u>The Confirmation Order Is Final</u>

Heartwood asserts that use of the 19417 Reference in Second Valuation Order and the Third Valuation Order renders null and void any prior order regarding the Lien.[14] Heartwood further argues that it is not bound by the Confirmation Order and that it is entitled to file the Claim eleven years after confirmation of the Amended Plan. Heartwood is mistaken.

The Amended Plan identified (i) BankAtlantic as a secured creditor by name

---

[13] *See* ECF No. 9, p. 9; ECF No. 17; ECF No. 33; ECF No. 34.

[14] ECF Nos. 74, 75, 89, 94, and 103.

and address, (ii) the BankAtlantic Account by its full account number, (iii) the Overlook Property by street address and legal description, and (iv) the Overlook Property as Debtor's single-family homestead.[15] This information is consistent with Debtor's disclosures on his Schedules and Statements. It also matches detailed information provided in all three valuation motions.[16]

Confirmation of Debtor's Amended plan was a final judgment from which neither BankAtlantic nor Heartwood appealed. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 269 (2010) ("The Bankruptcy Court's order confirming [the debtor's] proposed plan was a final judgment from which [creditor] did not appeal."); *Whaley v. Tennyson (In re Tennyson)*, 611 F.3d 873, 875 (11th Cir. 2010); *Finova Capital Corp. v. Larson Pharmacy Inc. (In re Optical Tech., Inc.)*, 425 F.3d 1294, 1300 (11th Cir. 2005). This Court's interpretation of that order is entitled to substantial deference. 425 F.3d at 1302-03.

Paragraph 8 of the Confirmation Order provides as follows:

> To the extent the Plan sought a determination of valuation pursuant to Bankruptcy Rule 3012, and no objections were filed or any objections were resolved, the terms of the Plan will be binding upon the affected secured creditors, and any allowed proof of claim will be secured only to the extend [sic] of the value as provided for in the Plan and unsecured as to the balance of the claim.[17]

---

[15] ECF No. 33, p. 1.

[16] The valuation motions included Debtor's name, the number of the BankAtlantic Account, and the street address (and legal description) of the Overlook Property.

[17] ECF No. 37. The Confirmation Order contained a minor typographical error. "Extend" should be "extent".

The Amended Plan does not list the 19417 Reference for the BankAtlantic Mortgage and instead refers solely to the recording information of the plat for the Overlook Property.[18] As a result, the Confirmation Order does not incorporate the 19417 Reference of which Heartwood now complains. There is no doubt that the Amended Plan (and therefore the Confirmation Order by extension) accurately identified (i) BankAtlantic as a secured creditor on the confirmation date, (ii) the Overlook Property as the affected real property, and (iii) the BankAtlantic Account as the affected mortgage account.

Based upon these factual findings, the Court determines that Debtor provided BankAtlantic with adequate notice of the stripping of the Lien from the Overlook Property. The terms of the Confirmation Order bound BankAtlantic. Heartwood, as BankAtlantic's successor-in-interest, is likewise bound and cannot now assert a claim against Debtor's estate.

B.    Heartwood Had Inquiry Notice

Heartwood is also bound by the First, Second, and Third Valuation Orders, each of which represents a final, non-appealable order of this Court. Each of the underlying Valuation Motions and the orders granting those motions correctly identified Debtor as the obligor on the BankAtlantic Mortgage and the Overlook

---

[18] ECF No. 33, p. 1.

Property by street address and legal description. These orders also identified either BankAtlantic or Lender as the lienholder.[19] Despite its uncontested receipt of the Third Valuation Motion and the Third Valuation Order, each of which listed Heartwood by name, Heartwood still argues that it did not have a reasonable basis for inquiry notice regarding the validity of the Lien against the Overlook Property.

Heartwood bases this argument upon Debtor's reference to the Lien as a "second lien" upon the Overlook Property. By way of explanation, Heartwood clarifies that, at some unclear point in time, BankAtlantic held two secured claims upon the Overlook Property, one of which was paid off prior to the Petition Date. Because the other secured claim previously held by BankAtlantic was no longer in existence when Debtor filed his Bankruptcy Case, Heartwood theorizes that any reference to the Lien as the "second lien" on the Overlook Property was incorrect and misleading.

Heartwood is once again mistaken. Debtor's Schedules and Statements show that Countrywide held a lien against the Overlook Property securing a claim in the amount of $435,884.55. The First, Second, and Third Valuation Order each clarified that (i) the value of the Overlook Property was $389,000.00 as of the Petition Date, and (ii) the total of all secured claims senior to the Lien was $435,994.55. Putting these two facts together,[20] it becomes apparent that BankAtlantic indeed held a

---

[19] Heartwood is an affiliate or otherwise related entity of BankAtlantic. *See* footnote 1, supra.

[20] The Court recognizes that the amount of the Countrywide claim differs between what is stated in Debtor's Schedules and Statements, and what is stated in the First, Second and Third Valuation

subordinate lien behind Countrywide on the Overlook Property. Heartwood's apparent misreading of Debtor's characterization of the Lien has no bearing upon Heartwood's duty of inquiry to determine whether *any* lien it held might be impaired by entry of either (i) the Third Valuation Order or (ii) the Confirmation Order.

As a practical matter, the Court takes judicial notice that it is common practice in the lending industry for any mortgagee attempting to identify a mortgage loan impacted by a bankruptcy case to utilize first, the debtor's name, and second, the account number. Heartwood's contention that it is not bound by each of the valuation orders and the Confirmation Order merely because of confusion due to the inclusion of the 19417 Reference is absurd. The Court seriously doubts that any mortgagee would research a mortgage loan by asking the mortgagor to recite the recording information for the mortgage at issue.

As a result, Heartwood was put on inquiry notice that the valuation motions and orders, the Amended Plan, and the Confirmation Order affected the validity and enforceability of the Lien.

C.    Application of Rule 60(a)

Heartwood's third argument, that the inclusion of the 19417 Reference was substantive rather than ministerial, is unsupported by citation to any legal authority.

---

Orders. Regardless of which amount is correct, the value of the Overlook Property was insufficient to satisfy Countrywide's claim in full, and therefore any subordinate lien would be wholly unsecured.

Although some errors may indeed be substantive and therefore not subject to revision under Rule 60(a), Heartwood has not supplied the Court with any authority clarifying why *this* error should be deemed substantive. *Compare U.S. v. Cotton*, 235 F. Supp. 2d 989, 990-91 (E.D. Wis. 2002) (failure to include provision permitting recovery of post-judgment expenses was not clerical) *with Gilbreth Int'l Corp. v. Lionel Leisure, Inc.*, 645 F. Supp. 732, 734 (E.D. Pa. 1986) (error in computation of fee award was clerical).

Despite the absence of legal support, Heartwood nonetheless protests that the inclusion of the 19417 Reference was not ministerial in nature and therefore cannot be modified under Federal Rule of Civil Procedure 60(a) ("Rule 60(a)").[21] The Court disagrees.

Rule 60(a) provides as follows:

> (a)    Corrections Based on Clerical Mistakes; Oversights and Omissions. The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice. But after an appeal has been docketed in the appellate court and while it is pending, such a mistake may be corrected only with the appellate court's leave.

In this instance, Debtor's inclusion of the 19417 Reference appears to be a product of inadvertence, a prototypical "scrivener's error". The First, Second, and

---

[21] Bankruptcy Rule 9024 incorporates by reference Rule 60(a).

Third Valuation Orders each clearly identified Debtor as the mortgagor and the Overlook Property by street address and legal description. The street address and legal description of the Overlook Property also match the information provided in the Amended Plan. As a result, Debtor's inclusion of the 19417 Reference in the Second and Third Valuation Orders was ministerial in nature and subject to revision under to Rule 60(a). *Cotton*, 235 F. Supp. 2d at 990 ("[F]or an error to be clerical, there must be some inconsistency between what was expressed during the proceedings and what the judgment reflects."); *see also Am. Trucking Ass'n v. Frisco Transp. Co.*, 358 U.S. 133, 145 (1958) ("It is axiomatic that courts have the power and duty to correct judgments which contain clerical errors or judgment which have issued due to inadvertence or mistake.") (internal citation omitted).

    D.    <u>Laches and Waiver</u>

The Court does not wish to excuse the errors regarding the 19417 Reference as a trivial detail and cautions either party against concluding that any similar error would be correctible under Rule 60(a) in a different case. For this reason, the Court feels it is important to add one additional equitable consideration that weighs in favor of application of Rule 60(a): Lender's failure to investigate despite uncontested notice of the Bankruptcy Case.

At a minimum, Debtor's reference to the mortgagor's name, a loan account number, street address, and legal description should have prompted some investigation by BankAtlantic upon the filing of Debtor's Schedules and Statements.

15

The inclusion of this information in the Amended Plan and each of the valuation motions and orders likewise offered Lender multiple opportunities to investigate and, if necessary, object to the treatment of the Lien under the Amended Plan.

Despite having ample notice of the Bankruptcy Case, Lender failed to investigate and object over the course of not months, but years. As a result, the Court concludes that the equitable doctrines of laches and waiver preclude Heartwood's present opposition to the treatment of its Claim and the Lien years after confirmation of the Amended Plan, discharge of Debtor, and closure of the Bankruptcy Case.[22] *Muhammad v. Sec'y, Dep't of Corrections*, 554 F.3d 949, 957 (11th Cir. 2009) (waiver is intentional relinquishment of a known right) (internal citation and quotation marks omitted); *Venus Lines Agency, Inc. v. CVG Int'l Am., Inc.*, 234 F.3d 1225, 1230 (11th Cir. 2000) (application of equitable doctrine of laches is appropriate where inexcusable delay in asserting right or claim results in prejudice to opposing party).

Although BankAtlantic may not have intended to submit to the treatment in the Amended Plan, Lender's failure to timely investigate and participate in the Bankruptcy Case despite clear notice regarding lien-stripping involving the Overlook Property resulted in a functional forfeiture of the Lien. *Id.* The passage of eleven years since entry of the Confirmation Order and over six years since the closure of the Bankruptcy Case strongly weighs in favor of preserving the finality of the Second

---

[22] Heartwood was the only Lender entity to file a proof of claim.

Valuation Order, Third Valuation Order, and the Confirmation Order. Consequently, the Court will correct the 19417 Reference in the Second and Third Valuation Orders to reflect the Amended Plan's treatment of the Lien.

## ORDER

Accordingly, it is hereby **ORDERED** that:

1.    The Motion to Amend (ECF No. 85) is **GRANTED**.

2.    Debtor shall submit amended proposed orders to the Court, substantially in the form of the Second Valuation Order and the Third Valuation Order, respectively, correcting the 19417 Reference with the correct recording information for the BankAtlantic Mortgage. Each of the proposed orders shall include a footnote at the end of the title stating that the amendment is pursuant to this Memorandum Opinion and Order.

3.    Debtor's Objection to the Claim (ECF No. 81) is **SUSTAINED**. The Claim shall be allowed solely as a general unsecured claim consistent with the terms of the Third Valuation Order. Heartwood is not entitled to any distribution in this Bankruptcy Case because the Claim was not timely filed.

4.    The Court retains jurisdiction over the interpretation and implementation of this Memorandum Opinion and Order.

# # #

Copies Furnished To:

James E. Copeland, Esq.

17

Attorney Copeland is directed to serve a copy of this Memorandum Opinion and Order on all interested parties in this contested matter, and to file a certificate of service in the manner required by Local Rules 2002-1(F) and 5005-1(G)(2).